RICHARD S. BROOKS and BIRKETT B. BROOKS, Copartners, Doing Business as R. S. BROOKS & SON, Respondents, v. THE WESTERN UNION TELEGRAPH COMPANY, a Corporation, Appellant.

### No. 1539. (76 Pac. 881.)

1. **Telegrams: Failure to Transmit: Law of the Case: Appeal: Second Appeal.**
   A decision on appeal becomes the law of the case as to all questions of law again presented on a retrial.

2. **Same: Damages: Evidence: Sufficiency.**
   In an action against a telegraph company for negligent failure to send certain telegrams relative to a sale of horses, evidence *held* sufficient to show, on the question of damages, that the party in charge of the horses, on failing to receive the expected telegram, used his best judgment in disposing of the animals, and exercised due diligence in his endeavor to obtain the highest and best price under the circumstances.

### (Decided May 21, 1904.)

Appeal from the Second District Court, Weber County. —*Hon. H. H. Rolapp*, Judge.

Action to recover damages sustained because of the failure and neglect of the defendant company to send and deliver certain telegrams which were delivered to it by plaintiff for transmission. From a judgment in favor of the plaintiffs, the defendant appealed.

AFFIRMED.

*George H. Fearons, Esq.,* and *Messrs. Rogers & Street* for appellant.

*Messrs. Henderson & Macmillan* for respondents.

BARTCH, J.—This action was brought to recover $562, as damages which the plaintiffs claim they sustained because of the neglect and failure of the defendant to send certain telegrams which were delivered to it, and the charges for sending them paid for by the plaintiff B. B. Brooks. The telegrams were delivered to the defendant's agent at Ogden, Utah, and were to be sent to Green River, Wyo. They referred to a sale of horses. The case has been twice tried, and each trial resulted in a verdict and judgment in favor of the plaintiffs for $562, the amount of damages claimed. So the case has been twice appealed. It was before us the first time at the February term, 1903, when we decided all the material questions of law then and now presented, and the decision is reported in 26 Utah 147, 156, 72 Pac. 499. The former decision therefore becomes the law of the case as to all questions of law again presented. Then, as now, it was shown by the evidence that the horses in question, at the time the sale was bargained for, were at Green River, and were to be delivered to the purchaser upon his arrival at that place from Ogden, if satisfactory to him. The party in charge of the animals, upon failing to receive any telegram from his partner at Ogden concerning the transaction, after repeated inquiries therefor of the defendant's agent at that place, sold them to another party at Green River. Concerning the sale thus made, the evidence in the record on the former appeal failed to show that the horses were sold for the best price obtainable, under the circumstances, by the exercise of reasonable diligence, or to show any necessity for disposing of the horses before the time of the arrival of the purchaser from Ogden. The absence of such evidence rendered the judgment, which was for more than nominal damages, erroneous, since we decided and held: "Where a telegraph company's failure to deliver messages resulted in the addressee's failure to sell certain property

to a person who had agreed to purchase it at a certain price, the measure of damages was the difference between the amount which he would have received for the property and the amount which he did receive on disposing of it after use of due diligence to obtain the highest price which could be had under the circumstances.'' In reversing the case upon this ground, Mr. Justice McCARTY, speaking for the court, said: ''This case must, however, be reversed and sent back for a new trial. It was not shown that the price for which the horses were sold was the highest price that respondents, with reasonable diligence, could have obtained under the circumstances; and there is no evidence in the record which even tends to show that there was or appeared to be any necessity for disposing of the horses before Searcy, the party to whom they were bargained, arrived. It will thus be observed that some of the elements necessary to entitle respondents to recover more than nominal damages are lacking, as the record now stands. Under these circumstances, the instructions asked by appellant should have been given, and it was error for the court to refuse.''

The decisive question, therefore, now, is whether the evidence thus referred to, and the lack of which rendered the former judgment erroneous, has been supplied herein. The witness R. S. Brooks, one of the plaintiffs, and the one who had the horses in charge at Green River, testified, in substance, that, upon failing to obtain a telegram from his partner, he believed the purchaser from Ogden was not coming; that thereupon, seeing some horsemen there, he tried to sell the horses to them; that he tried to sell to one Toponce, and ''made inquiries whether there were any horse buyers there, and did not find any, except Mr. Toponce, up to that time;'' that about 7:30 o'clock in the evening of the same day (September 24) he sold the horses at $9 per head which was the best price he could get; that on the next day the purchaser arrived from Ogden (Mr. Searcy), looked the horses over, and demanded them at

the agreed price of $11 per head; and that witness remained there for three days after the sale, but saw no other horse buyers around there. Respecting the point why he sold the horses so soon, the witness testified: "I sold them because I knew Mr. Searcy was not coming, and it was expensive keeping them there. The horses were shrinking every hour, and this was the only buyer I saw who wanted any horses, and I sold them to him. Green River has about six or eight hundred people. It is a division station, composed principally of railroad men and merchants. It is not a horse market, and Denver, which is about 400 miles distant, is the first horse market east of there. The next horse market east is Grand Island. I know of no horse market south or north of Green River, and Ogden is the first horse market west of Green River, and is about 180 miles away. Salt Lake is the next horse market. Mr. Searcy had not arrived at Green River on the 24th. He arrived on Tuesday, the 25th." This evidence appears to be uncontradicted, and we do not deem further reference to the testimony necessary. From the proof now before us, it seems clear that the party in charge used his best judgment, upon failing to receive the expected telegram, in disposing of the animals, and exercised due diligence in his endeavor to obtain the highest and best price, under the circumstances. Nor, under the facts and circumstances as they now appear, can it justly be said that he acted too hastily in making the sale.

Under the authority of our former decision, above referred to, this judgment must be affirmed, with costs. It is so ordered.

BASKIN, C. J., and McCARTY, J., concur.