<hr/>

THOMPSON and another, Respondents, vs. THE WESTERN UNION TELEGRAPH COMPANY, Appellant.

*November 5 — December 1, 1885.*

*Telegraph companies: Limiting liability: Negligence: Loss of sale: Damages.*

1. A stipulation upon a telegraph blank that the company will not be liable for mistakes or delays in the transmission or delivery of any *unrepeated* message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same, is void so far as it attempts to limit the liability for a want of ordinary care and diligence.

2. The following telegram was delayed in transmission by negligence of the defendant's servants: "Send bay horse to-day. Mock loads to-night." Mock was a well known buyer who was in the habit of shipping horses from the vicinity of the place from which the message was sent, and presumably the defendant's agent there knew that fact. The delay caused the sender of the message to lose the sale of the horse. *Held,* that the company was liable for actual damages.

APPEAL from the Circuit Court for *Grant* County.

The case is stated in the opinion.

For the appellant there was a brief by *Brooks & Dutcher*, and oral argument by *Mr. Brooks*. They contended, *inter alia*, that a stipulation limiting the liability of a telegraph company is valid when gross negligence or fraud is not shown. *Heimann v. W. U. Tel. Co.* 57 Wis. 562; *Young v. W. U. Tel. Co.* 65 N. Y. 163; *Clement v. W. U. Tel. Co.* 137 Mass. 463; *Grinnell v. W. U. Tel. Co.* 113 id. 299. The rule applicable to common carriers applies with equal force to telegraph companies. *Boorman v. Am. Exp. Co.* 21 Wis. 152; *Bank of Ky. v. Adams Exp. Co.* 93 U. S. 188; *Hill v. S. B. & N. Y. R. Co.* 73 N. Y. 351; 2 Wait's Act. & Def. 40. Telegraph companies should not even be held to so strict a liability as carriers. *Ellis v. Am. Tel. Co.* 13 Allen, 226. The company was not liable in this case beyond the amount received by it. The agent was not informed of the importance of the message or that special damage would result from delay. *Baldwin v. U. S. Tel. Co.* 45 N. Y. 744; *Dorgan v. Telegraph Co.* 1 Am. L. T. R. (N. S.), 407; *Candee v. W. U. Tel. Co.* 35 Wis. 471; *Behm v. W. U. Tel. Co.* 8 Biss. 131; *Hord v. W. U. Tel. Co.* Cin. Law Bull. Feb. 1878, p. 147.

For the respondents there was a brief by *Wilson & Provis*, and oral argument by *Mr. Provis*.

TAYLOR, J. The respondents brought their action in justice's court against the appellant company to recover damages of the company for negligently delaying the transmission and delivery of the following telegram, delivered by the plaintiffs to the agent of the appellant at Boscobel, in this state, viz.:

"BOSCOBEL, April 26, 1884.

"*To E. G. Thompson, Fennimore, Wis.:* Send bay horse to-day. Mock loads to-night.

[Signed]     "WILLIAM THOMPSON."

This message was delivered to the agent of the company at Boscobel at ten A. M., on the 26th of April, 1884, and was not delivered at Fennimore until about ten A. M. on the 28th of April, 1884. The distance between Boscobel and Fennimore is about twelve miles. The company has a telegraph line between the two places. To send the message over the lines it would go first to Milwaukee and from there to Fennimore. The agent of the company at Fennimore says he received the message at ten o'clock A. M. on the 28th, and delivered it to the person to whom it was sent in three minutes after it was received. The usual time for sending a dispatch from Milwaukee to Fennimore is about twenty minutes. It was also stated by the operator at Boscobel that he sent the message to Milwaukee as soon as it was received by him from the plaintiff. The delay was between Milwaukee and Fennimore. The 26th of April, 1884, was Saturday.

The respondents recovered in justice's court, and the company appealed to the circuit court. A trial was had in that court, and the respondents recovered a verdict for $25 damages, for which they had judgment, and the company appeals to this court. Upon the argument in this court, the counsel for the appellant insists that upon the proofs the plaintiff was entitled to recover only the money paid for sending the message, and, as that had been tendered after the action was commenced, together with the costs of the action up to the time of the tender, the judgment should have been in favor of the appellant. This proposition, it is insisted, should be sustained upon two grounds: (1) Because such was the contract between the parties at the time the message was sent; and, (2) upon the facts proved and under the complaint, such is the extent of the damages the plaintiff is entitled to recover against the appellant in this action.

The telegram was written upon one of the blanks of the company, and the plaintiff admits that he knew the con-

tents of said blank when he sent the message. The follow-
ing is printed on such blanks, viz.:

" All messages taken by this company are subject to the
following terms: To guard against mistakes or delays the
sender of a message should order it *repeated;* that is, tele-
graphed back to the originating office for comparison. For
this one half the regular rate is charged in addition. It is
agreed between the sender of the following message and
this company that said company shall not be liable for mis-
takes or delays in the transmission or delivery, or for non-
delivery, of any *unrepeated* message, whether happening by
negligence of its servants or otherwise, beyond the amount re-
ceived for sending the same; nor for mistakes or delays in the
transmission or delivery, or for non-delivery, of any *repeated*
message beyond fifty times the sum received for sending
the same, unless specially insured; nor in any case for de-
lays arising from unavoidable interruption in the working
of its lines, or for errors in cipher or obscure messages. And
this company is hereby made the agent of the sender with-
out liability to forward any message over the lines of any
other company when necessary to reach its destination.

" Correctness in the transmission of messages to any point
on the lines of this company can be *insured* by contract in
writing, stating agreed amount of risk, and payment of
premium thereon at the following rates, in addition to the
usual charge for repeated messages, viz.: One per cent. for
any distance not exceeding 1,000 miles, and two per cent.
for any greater distance. No employee of the company is
authorized to vary the foregoing."

It is not alleged in the complaint, nor proved upon the
trial, that any reason was given by the plaintiff to the
agent at Boscobel for sending the message, except what
appears on the face of it; but he testifies that he told the
agent to "hurry it up."

It is insisted that, according to the terms of the contract

signed by the plaintiff when he sent his message, the company is relieved from all liability to respond in damages to the plaintiff for any neglect or delay in forwarding or delivering the message, beyond the repayment of the money paid to the company for sending the same. Whatever may be the decisions of other courts in other states upon this question, we think the decisions of this court settle the question against the appellant. *Candee v. W. U. Tel. Co.* 34 Wis. 471; *Hibbard v. W. U. Tel. Co.* 33 Wis. 558, 568. In these cases the telegrams were sent as night dispatches, upon printed blanks of the company by the terms of which such messages were sent at half the usual rates for day messages, " on condition that the company should *not be liable for errors or delays in the transmission or delivery, or nondelivery, of such messages, from whatever cause occurring,* and should only be bound in such cases to return the amount paid by the sender." In both cases it was held that the contract was void as against public policy so far as it undertakes to protect the company from liability for the negligence or fraud of its agents. In the last case cited the present chief justice says, quoting from the opinion in *Baldwin v. U. S. Tel. Co.* 45 N. Y. 751: " While telegraph companies are not insurers and do not guarantee the delivery of all messages with entire accuracy and against all contingencies, they do undertake for ordinary care and vigilance in the performance of their duties, and to answer for the neglect and omission of duty of their servants and agents;" "and this degree of liability the law imposes upon them, as well in the transmission and delivery of a night as of a day dispatch." Chief Justice Dixon, in the *Candee Case,* says: " Either the company enters into a contract with him (the sender of the message), and takes upon itself the burden of some sort of legal obligation to send the message, or it does not. It would be manifestly against reason, and what all must assume to be the intention of the

parties, to say that no contract whatever is made between them; and nobody, not even the officers or representatives of the company, asserts such a doctrine. It would seem utterly absurd to assert it. Holding itself out as ready and willing and able to perform the service for whosoever comes and pays the consideration itself has fixed and declared to be sufficient, and actually receiving such consideration, it cannot be denied, we think, that a legal obligation arises and duty exists on the part of the company to transmit the message with reasonable care and diligence, according to the request of the sender."

We are quite satisfied with the decisions of this court above cited, and with the reasons given to sustain them, and we believe they are in accord with the weight of authority in other courts. See *U. S. Tel. Co. v. Gildersleve*, 29 Md. 248; *Baldwin v. U. S. Tel. Co.* 45 N. Y. 744; *Breese v. U. S. Tel. Co.* 48 N. Y. 140; *Bartlett v. W. U. Tel. Co.* 62 Me. 209; *New York & W. P. Tel. Co. v. Dryburg*, 35 Pa. St. 298; *Telegraph Co. v. Griswold*, 37 Ohio St. 301; *W. U. Tel. Co. v. Fenton*, 52 Ind. 1; *Abraham v. W. U. Tel. Co.* 23 Fed. Rep. 315; *Express Co. v. Caldwell*, 21 Wall. 269; *Parks v. Alta Cal. Tel. Co.* 13 Cal. 422; *White v. W. U. Tel. Co.* 14 Fed. Rep. 710, 718; *True v. International Tel. Co.* 60 Me. 9; *Wann v. W. U. Tel. Co.* 37 Mo. 482.

In holding that the telegraph company was liable to the plaintiff upon the facts proved in this case, we do not wish to be understood as holding that the company, under the agreement in question, would be liable for a mere mistake as to the accuracy of the message sent, or in its delivery, which might occur in the transmission or delivery notwithstanding the exercise of ordinary care on the part of the company, its agents, and servants. The evidence in this case shows a want of ordinary care and diligence in the transmission and delivery of the message when unexplained, and not a mere mistake which might occur consistently

with the exercise of ordinary care. The learned circuit judge did not err in charging the jury that "it was the duty of the defendant company to transmit the message with reasonable care and diligence, and, in so far as the contract at the head of the message blank undertakes to limit or change this liability, it is void."

The only other question in the case is whether the plaintiff, upon the facts proved, was entitled to recover more than nominal damages. It seems to us that the telegram itself informed the agent of the company that it was of importance that the horse mentioned therein should be sent to Boscobel immediately on receipt of the telegram, so that he would arrive there before Mock would load his horses that evening. It was shown on the trial that Mock was a well-known purchaser of horses in that vicinity, and was in the habit of shipping horses purchased from that place to Milwaukee; and, in the absence of evidence to the contrary, it may be presumed that the agent of the company knew that fact. The telegram fairly conveyed the idea to the agent that this horse was wanted on that day at Boscobel for the purpose of sale to Mock. This was indicated by the words in the telegram, "Mock loads to-night." The evidence clearly tended to show that the plaintiffs lost the sale of the horse to Mock by reason of the delay in transmitting the message, and that the loss of such sale was a damage to them of $25, which was the amount they recovered.

We think the case was correctly decided at the circuit, and there are no errors in the record which should cause a reversal of the judgment. This decision, as well as the two above quoted made by this court, are in accord with the policy of this state as evidenced by the enactment of ch. 171, Laws of 1885. This chapter expressly declares that all telegraph companies doing business in this state shall be liable "for all damages occasioned by failure or negligence

of their operators, servants, or employees in receiving, copying, transmitting, or delivering dispatches or messages."

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 25 N. W. Rep. 792.— REP.