RICHARD S. BROOKS and BIRKETT B. BROOKS,
  Co-partners, Doing Business as R. S. BROOKS &
  SON, Respondents, v THE WESTERN UNION
  TELEGRAPH COMPANY, a Corporation, Appellant.

No. 1429.    (72 Pac. 499.)

1. Telegraph Companies:  Failure to Deliver Message:
   Defense—Claim Not  Presented  Within  60 Days:
   Pleading.

   In an action against a telegraph company for failure to transmit
     a message, a defense that the claim for damages was not pre-
     sented within sixty days was not available without being spe-
     cially pleaded in the court below.

2. Same:  Importance of Message:  Knowledge of Com-
   pany.

   One of the plaintiffs delivered to defendant two telegrams for trans-
     mission, the first one reading:  "S. there Monday noon or Tues-
     day  morning  sure.  Get letters.  E. wants buy.  Meet you.
     Price eleven."  The second telegram was marked "Rush," was

Brooks & Son v. Western Union Tel. Co.

addressed to the same party, and read: "S. arrives Green River 3 a. m.; did not get anything Idaho." Because of the failure to receive the message, the addressee failed to meet the person mentioned therein as S., to whom a large number of horses were to be sold at an agreed price. *Held,* that the messages were sufficient to put the telegraph company on inquiry as to their importance, and hence authorized a recovery for the damages occasioned by failure to transmit them.

3. **Same: Duties of Company: Burden of Proof.**
A telegraph company, having received messages for transmission, is legally bound to use ordinary diligence and promptness in sending them as directed, and when it fails to do so, the burden is upon it to excuse or justify its omission.

4. **Same: Measure of Damages.**
Where a telegraph company's failure to deliver messages resulted in the addressee's failing to sell certain property to a person who had agreed to purchase it at a certain price, the measure of damages was the difference between the amount which he would have received for the property and the amount which he did receive on disposing of it after use of due diligence to obtain the highest price which could be had under the circumstances.

5. **Same: Damages: Evidence to Support.**
A judgment for damages equal to the difference between the price at which the property would have been sold and that at which it actually was sold was erroneous, in the absence of any evidence that the price at which the property was actually sold was the highest price that could with reasonable diligence have been obtained under the circumstances.

6. **Same: Limitation of Liability: Stipulation in Contract.**
A stipulation, printed on the back of the blank used by a telegraph company, that the company should be liable only for a certain sum as damages caused by failure to deliver an unrepeated message, could not limit the company's liability for damages caused by the negligent laying aside of the message.

(Decided May 14, 1903.)

Appeal from the Second District Court, Weber County.—*Hon. H. H. Rolapp,* Judge.

Action to recover damages alleged to have been occasioned by the failure of the defendant to transmit mes-

sages.   From a judgment in favor of the plaintiffs, the defendant appealed.

REVERSED.

*George H. Fearons, Esq.,* and *Lindsay R. Rogers, Esq.,* for appellant.

The telegrams were written upon a printed form containing certain terms, and were signed by the sender. This amounted to an agreement that they should be sent according to such terms.   One of the terms being that the telegraph company would not be liable for damages in any case where the claim was not presented in writing within sixty days after the message was accepted for transmission, is neither against law, unreasonable nor contrary to public policy.   Respondents having failed to present such claim within the stipulated period, or at all, the court erred in not instructing the jury (as appellant requested) to find a verdict of no cause of action.   Wolf v. Western Union Tel. Co., 62 Pa. 83, cited with approval and followed by the Supreme Court of the United States in Southern Express Co. v. Caldwell, 21 Wall. 264; Lewis v. Great Western Railway, 5 Hurl. & N. 867; Beal v. South Devon Railway, Id. 883; Beasley v. Western Union Tel. Co., 39 Fed. 181; Findlay v. Western Union Tel. Co., 64 Fed. 459; Young v. Western Union Tel. Co., 65 N. Y. 163; Heiman v. Western Union Tel. Co., 57 Wis. 562; Cole v. Western Union Tel. Co., 33 Minn. 227; Russell v. Western Union Tel. Co., 57 Kan. 230; Western Union Tel. Co. v. Dunfield, 11 Col. 335; Western Union Tel. Co. v. Yopst, 118 Ind. 248; Sherrill v. Western Union Tel. Co., 109 N. Car. 527; Lester v. Western Union Tel. Co., 84 Tex. 313; Western Union Tel. Co. v. Fairbanks, 15 Bradw. (Ills.) 601; Massengale v. Western Union Tel. Co., 17 Mo. App. 259; Western Union Tel. Co. v. Way, 83 Ala. 542; Western Union Tel. Co. v. Dougherty, 54 Ark. 221; Hill v. Western Union Tel. Co., 85 Ga. 425; Aiken v. Wes-

tern Union Tel. Co., 5 S. Car. 358; Manier v. Western Union Tel. Co. (Tenn.), 29 S. W. 732; Clements v. Western Union Tel. Co. (Miss.), 27 So. 603; Edson v. Ins. Co., 35 La. Ann. 353; Kirby v. Western Union Tel. Co. (S. Dak.), 65 N. W. 37.

Respondents signally failed to show or attempt to show the market value of the horses, or that the price ($9) at which they sold them to Engenoen was a fair price or the best price under the circumstances they could obtain. In cases of executory contracts for the purchase or sale of personal property ordinarily the proper measure of damages is the difference between the contract price and the market value of the goods at the time when the breach occurs. Western Union Tel. Co. v. Hall, 124 U. S. 444 (456); Hadley v. Baxendale, 9 Exc. 341; Warren v. Robison, 25 Utah 205; Rockwood v. Allen, 7 Mass. 254; Ferrer v. Beale, 1 Ld. Raym. 692; Allison v. Chandler, 11 Mich. 542; Griffin v. Colver, 16 N. Y. 494; Buckley v. Buckley, 12 Nev. 423; Mason v. Hawes, 52 Conn. 12; Page v. Sumpter, 53 Wis. 652; Goodbar v. Lindsley, 51 Ark. 380; Dexter v. Spear, 4 Mason 115; Walker v. Smith, 1 Wash. C. C. 152; United States v. Smith, 94 U. S. 214; Milwaukee Etc. R. Co. v. Arms, 91 U. S. 489; 1 Sutherland on Damages, sec. 12.

*H. H. Henderson, Esq.,* for respondents.

The defendant does not plead that the claim of the plaintiff was not presented to the defendant within sixty days after the messages were sent. If the defendant relied upon the defense that the claim of plaintiffs was not presented to it within sixty days, he should set out the fact and should have proved it. Sherrill v. Western Union Tel. Co., 109 N. C. 527, 14 S. E. 94; Western Union Tel. Co. v. Linney, 28 S. W. 238; Martin v. Sunset Tel. Co., 18 Wash. 261, 51 Pac. 376; Encl. of Pleading and Practice, vol. 21, page 522; Western Union Tel. Co. v. Smith, 26 S. W. 216.

McCARTY, J.—The respondents were partners engaged in buying and selling horses in the States of Utah and Wyoming, with their principal place of business at Ogden, Utah. On the 24th day of September, 1900, they had a band of horses of 281 head at Green River, Wyo., which they had bargained to sell to one Searcy at the agreed price of $11 per head, the horses to be delivered and paid for at Green River. Respondent B. B. Brooks was to keep R. S. Brooks, who had the horses in charge, informed when Searcy would arrive at Green River to receive and pay for the horses. On September 23, 1900, B. B. Brooks delivered to appellant for transmission over its lines from Ogden to Green River, a distance of about 201 miles, the following telegraphic message: "Ogden, Utah, Sept. 23, 1900. R. S. Brooks, Green River, Wyo. Searcy there Monday noon or Tuesday morning sure. Get letters. H. Engenoen wants buy. Meet you. Price eleven. B. B. Brooks."

On September 24th, B. B. Brooks delivered to appellant the following telegraphic message for transmission:

"RUSH. Ogden, Utah, Sept. 24, 1900. R S. Brooks, Green River, Wyo. Searcy arrives Green River 3 a. m.; did not get anything Idaho. B. B. Brooks."

Neither of these messages reached their destination. R. S. Brooks, on September 24th, called at appellant's office at Green River, and inquired if there were any messages there for him, and was informed by the operator that there were none. He called again on the 25th, 26th, and 27th, and each time was informed there were no messages for him. Defendant in its answer admitted that the messages in question were delivered to it at the time and place alleged in plaintiff's complaint, and that the tolls and fees for their transmission were paid by respondents, but alleges that the messages were accepted by defendant subject to the terms and conditions printed on the back of the blanks used by it upon which

the messages were written, which terms and conditions were understood by respondents. These terms and conditions, so far as material in this case, are as follows: "To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message, beyond the amount received for sending the same." It is admitted that the messages in question were unrepeated. At the conclusion of the testimony the defendant requested the court to instruct the jury to return a verdict in favor of plaintiffs for nominal damages only, on the ground that the evidence failed to show that the plaintiffs had been damaged in any substantial sum. The court refused to give the instruction asked for by defendant, but directed a verdict in favor of the plaintiffs in the sum of $562, this being the difference in the price for which plaintiffs had bargained to sell the horses to Searcy and the price for which they were sold. Defendant appeals.

Appellant challenges the judgment on two grounds: (1) That appellant is not liable because the claim sued on was not presented within sixty days after the messages were filed in the company's office for transmission, as provided by the terms printed upon the backs of the printed forms in use by the company for the receiving and transmission of messages, with which terms and forms respondents were familiar. (2) That the court erred in not instructing the jury to return a verdict for nominal damages only.

There is no merit whatever to appellant's first contention. The defense that the claim was not presented within sixty days after the messages were filed with the company for transmission, being new matter, should have been specially pleaded in order to en-

able appellant to avail itself of it, and, having failed to
so plead it, the question cannot now be raised in this
court for the first time.   This rule is so well settled that
we deem it unnecessary to cite authorities in support of
it; and, furthermore, even if it were a good and valid
defense, which is not altogether free from doubt, but
which it is not necessary for us to determine at this time,
there is not one word of testimony in the record that
even tends to show that the claim was not so presented.

It was also claimed by counsel for appellant in his
oral argument that there was nothing on the face of the
messages that indicated their nature or importance, and
that therefore it cannot be presumed that appellant
or its agents, at the time the messages were received
for transmission, had in contemplation the damages
that would necessarily and directly result to respond-
ents because of any failure or neglect to promptly trans-
mit and deliver them.   In other words, that appellant,
when it received the messages, was not advised that they
referred to the sale of a band of horses, and in case of
non-delivery of the message the sale would not take
place, and that damages would arise therefrom.   The
rule contended for by counsel for appellant has been
followed by many of the courts of last resort.   The rea-
son assigned for invoking this rule is, in substance, that
it would be unjust to hold a company liable for damages
incurred because of the negligent and incorrect trans-
mission or non-transmission of a message which does
not disclose on its face the nature and importance
thereof, as the company could have no means of know-
ing or estimating what the probable damage resulting
from such negligence would be; and, not having any
information on the subject, could not, at the time the
contract was entered into, have had such damage in
contemplation, in case of a breach thereof.   But the
authorities hold, almost uniformly, that it is sufficient
to create a liability on the part of a company for all
damages directly and proximately resulting from the
negligent acts of its agents in failing to transmit a

message in the form in which it is delivered, or in omitting to send it at all, provided the message discloses enough of its nature and importance to put an ordinary and prudent person upon inquiry.   2 Shearman & Redfield, Neg., 754; Thompson on Electricity, 297; Daugherty v. Am. Union Tel. Co., 75 Ala. 168, 51 Am. Rep. 435; Wes. Union Tel. Co., v. Way, 75 Ala. 542, 4 South. 844; Leonard v. N. Y., etc., Tel. Co., 41 N. Y. 544, 1 Am. St. Rep. 446; Rittenhouse v. Independent Line of Tel., 44 N. Y. 263, 4 Am. Rep. 673; Thompson v. Wes. Union Tel. Co., 64 Wis. 531, 25 N. W. 789, 54 Am. Rep. 644; Wes. Union Tel. Co. v. Hyer Bros., 22 Fla. 637, 1 South. 129, 1 Am. St. Rep. 222; Hart v. Wes. Union Tel Co., 66 Cal. 579, 6 Pac. 637, 56 Am. Rep. 119; Wes. Union Tel. Co. v. Blanchard, 68 Ga. 299, 45 Am. Rep. 480; Wes. Union Tel. Co. v. Fatman, 73 Ga. 285, 54 Am. Rep. 877; Wes. Union Tel. Co. v. Weiting, 1 White & W. Civ. Cas. Ct. App., sec. 801; Wes. Union Tel. Co. v. Reynolds, 77 Va. 173, 46 Am. Rep. 715; Wertz v. Tel. Co., 7 Utah 446, 27 Pac. 172, 13 L. R. A. 510; Id., 8 Utah 499, 33 Pac. 136.

The majority of these cases go to the extent of holding that when a telegraph company contracts to transmit a message over its line, and receives the usual tolls therefor, it is legally bound to use ordinary care and diligence in performing such service, and that it will be liable for all damages that are the natural, immediate and proximate result of any negligence on the part of its agents in not correctly transmitting such message, or in failing to send it at all, notwithstanding the message, may be obscure, and its import and importance not known to the company or its agents.

The first message herein showed on its face that it referred to a commercial transaction.  This fact, together with the fact that respondent B. B. Brooks endeavored to send a second message relating to the same matter, with word "RUSH" written conspicuously thereon, was notice to the appellant that these messages were important, and, if appellant had desired any further infor-

mation on this point, it no doubt could have obtained it by inquiring of Brooks when he delivered the message to appellant for transmission over its wires.

3    Appellant, having received the messages, was legally bound to use ordinary diligence and promptness in sending them as directed, and the burden was upon the appellant to excuse or justify its omission in this respect, and, as it made no attempt to do so, respondents were entitled to recover whatever damages they suffered which the evidence showed was the natural and proximate result of such neglect and failure to send the messages.

The record shows that respondents had bargained
4    to sell the horses to Searcy for $11 per head, and that the sale would have taken place but for appellant's failure to transmit and deliver the messages referred to. When respondent B. B. Brooks arrived at Green River with the horses, and found that Searcy had not arrived, and that it was uncertain whether he would be there at all, it was incumbent upon him, if he intended to hold either Searcy or appellant responsible for all damages sustained because of his inability to dispose of the horses, as per his bargain with Searcy, to make the best disposition of them that was possible under the circumstances, and thereby prevent, so far as in his power, the accumulation of damages; and, if it were necessary to sell the horses, to do so for the highest price obtainable under the circumstances. The measure of damages under these conditions and circumstances would be the difference in the contract price and the amount for which Brooks was compelled to dispose of the horses, after using due diligence to get the highest price for which they could be sold under the circumstances. Shearman & Redfield, Neg. 755; U. S. Tel. Co. v. Wenger, 55 Pa. 262, 93 Am. Dec. 751; Wes. Union Tel. Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479; Thompson v. Wes. Union Tel. Co., 64 Wis. 531, 25 N. W. 789, 54 Am. Rep. 644; Squire v. Wes. Union Tel. Co., 98 Mass. 232, 93 Am. Dec. 157; Thompson, Law of

Electricity, 335; Sedgwick on Damages, 880, 881; Manville v. Tel. Co., 37 Iowa 214, 18 Am. Rep. 8; Wes. Union Tel. Co. v. Dubois, 128 Ill. 248, 21 N. E. 4, 15 Am. St. Rep. 109.

This case must, however, be reversed and sent back for a new trial. It was not shown that the price for which the horses were sold was the highest price that respondents, with reasonable diligence, could have obtained under the circumstances; and there is no evidence in the record which even tends to show that there was or appeared to be any necessity for disposing of the horses before Searcy, the party to whom they were bargained, arrived. It will thus be observed that some of the elements necessary to entitle respondents to recover more than nominal damages are lacking, as the record now stands. Under these circumstances, the instructions asked by appellant should have been given, and it was error for the court to refuse.

Appellant has set up in its answer, as a defense, that the messages were unrepeated, and therefore, under the printed rules referred to, it cannot be held liable for more than nominal damages. Neither of the parties have discussed this feature of the case in their briefs, nor did they refer to it in their oral arguments. However, as the case must be reversed and a new trial ordered, we deem it advisable to dispose of this question at the present time. We do not question the right of a company to adopt such reasonable rules as may be necessary to insure correctness in the transmission of messages over its lines, but in a case such as the one under consideration, where the messages are negligently laid aside and no attempt is made to perform the service for which the company has been paid, no rule or regulation of the company will exempt it from liability for such negligence, as public policy forbids contracts by telegraph companies of this character. Wertz v. Tel. Co., supra.

The case is reversed, with directions to the trial

court to grant a new trial; the costs of the appeal to be taxed against respondents.

BASKIN, C. J., and BARTCH, J., concur.