WESTERN UNION TELEGRAPH COMPANY, PLAINTIFF IN ERROR, v. JOHN MILTON, JR., DEFENDANT IN ERROR.

1. In an action on the case for damages, if the declaration makes a case entitling the plaintiff to any recovery whatever, though it be only nominal damages, a demurrer will not lie thereto, even if the declaration claims other or greater damages than the cause may legally entitle the plaintiff to recover; demurrer not being the proper way to test the *extent* of the recovery to be had. Such questions are properly raised and settled by objections to testimony at the trial, or by instructions to the jury as to the law applicable to the points raised, or by requiring the declaration to be reformed under Section 1043, Revised Statutes of 1892, Section 1433, General Statutes of 1906.

2. The amount paid to a telegraph company for transmitting a message is for correctly transmitting it, as the duty of the company requires it to do; and if because of the negligence of the employees of the company an incorrect copy of the message is transmitted and delivered, the company has failed ·in the performance of its duty imposed by law and assumed by it, and is liable for such failure notwithstanding a provision limiting its liability to the amount paid for transmission of unrepeated messages printed on the blanks furnished by the company upon which messages for transmission are written by patrons.

3. The duty of a telegraph company imposed by law and assumed by it to use due care and skill in transmitting messages and in delivering a correct copy thereof, and its liability for negligence or carelessness in transmitting messages and in delivering an incorrect copy of messages, cannot be affected by a printed provision upon the blanks used in delivering messages to be transmitted by wire, that the company "shall not be liable for mistakes

and delays in the transmission or delivery or for non-delivery of any unrepeated message, beyond the amount received for sending same."

4. In an action in tort against a telegraph company for the breach of a public duty in negligently transmitting an incorrect copy of a message delivered to it for transmission, the damages that can be recovered are for the loss or injury sustained by the plaintiff as a proximate consequence of the defendant's negligent act, which consequences were contemplated or should have been contemplated as probably or likely to follow the negligence.

5. Where the terms of a message delivered to a telegraph company for transmission are sufficient to show its relation to matters of importance known to the agent receiving the message, the defendant is liable in damages for such injury actually sustained as, under the circumstances, it should have contemplated would probably result from a negligent transmission of the message. It is not essential that the particular loss or injury sustained was contemplated, but the company is liable if the loss sustained should have been contemplated as a probable and proximate result of its negligence.

This case was decided by Division A.

Writ of error to the circuit court for Jackson county.

## STATEMENT.

The defendant in error brought an action in the circuit court for Jackson county against the Western Union Telegraph Company for damages for the failure to transmit and deliver a correct copy of a telegram received from the plaintiff for transmission.

The amended declaration filed July 7th, 1905, is as fol-

lows: "Now comes plaintiff, and by his attorney, sues the Western Union Telegraph Company, a foreign corporation, for that, whereas, heretofore, to wit: On the 24th day of September, A. D. 1904, and for a long time before said date and continuously ever since' said date, the said defendant was a telegraph company engaged in the transmission of messages, by electric wires, from various points in the United States; and that on said date above mentioned, said plaintiff delivered to the said defendant at its office and place of business in the town of Marianna, Jackson county, Florida, a message to be sent and delivered by said defendant, for reward and hire then and there paid defendant, by electric wire to a firm or corporation called George H. McFadden & Brothers, Agency, at Pensacola, Florida, in the words and figures following, to wit: 'Marianna, Florida, 9-24-04. George H. McFadden & Brothers, Agency, Pensacola, Florida: Bought for your account today's limit 175. Am doing my best to rush bill lading. John Milton, Jr.' That the said George H. McFadden & Brothers, Agency, was engaged in the business of purchasing and selling cotton on and before said date, and the said words 'one hundred and seventy-five' meant 175 bales of cotton which plaintiff had that day purchased for the account of the said George H. McFadden & Brothers, Agency; and the fact that said George H. McFadden & Brothers, Agency, was engaged in dealing in cotton and that the plaintiff had been engaged in shipping cotton to and buying cotton for said agency was well known to the said defendant. Said plaintiff, on the said day and date aforesaid, had a contract with the said George H. McFadden & Brothers, Agency, to buy for the account of the said George H. McFadden & Brothers, Agency, all the cotton which he could buy at ten cents per

pound upon a basis of middling cotton, the said ten cents middling basis being the limit of price which he was authorized on said day to buy; that the said George H. McFadden & Brothers, Agency, agreed to take and receive from the said plaintiff all the cotton he could buy at the price aforesaid upon his, the plaintiff, reporting by wire the number of said bales which he had so bought on said day, to said George H. McFadden & Brothers, Agency; but instead of transmitting said message as it was written and delivered as aforesaid, to it, said defendant in the transmission of said message negligently and carelessly substituted and used the words 'one hundred and twenty-five' in the place and stead of the words 'one hundred and seventy-five,' whereby plaintiff lost great sums of money as follows: Said George H. McFadden & Brothers, Agency, being only advised of the purchase of one hundred and twenty-five bales of cotton, by the plaintiff, by reason of the error and negligence of said defendant in transmitting and delivering said message, would only receive, as purchased on said day for their account by said plaintiff, 125 bales of cotton, and rejected the other fifty bales. The market for cotton had fallen one-half cent per pound by the time said cotton which had been bought as aforesaid by the plaintiff could arrive in Pensacola, Florida, and be delivered to said George H. McFadden & Brothers, Agency, the said George H. McFadden & Brothers, Agency, would only allow plaintiff, by reason of the premises, $9\frac{1}{2}$c per pound upon said fifty bales in excess of the one hundred and twenty-five reported to it by the telegraph message aforesaid, wherefore plaintiff lost $\frac{1}{2}$c per pound on fifty bales of said cotton, total weight of said bales beng 26,700, or a total loss of one hundred and thirty-three and 50-100

dollars. Wherefore, plaintiff brings suit and claims five hundred dollars damages."

The declaration was demurred to on the grounds:

"1. The negligence alleged is not the proximate cause of the loss claimed.

2. The fact that the message was sent one hundred and twenty-five instead of one hundred and seventy-five could not affect the right of plaintiff to claim on 175 bales, the amount plaintiff's amended declaration shows he was authorized to buy for the account of George H. McFadden & Brothers, Agency.

3. The damages claimed are not such as might fairly be supposed to have been in contemplation of the parties when the contract of the transmission of the telegram was made.

4. The damage alleged, and in the way alleged, is not one for which the law allows recovery.

5. The amended declaration does not state a cause of action."

The demurrer was overruled and the defendant company filed the following pleas: "(1) Not guilty; (2) The message delivered by the plaintiff to it at its place of business in the town of Marianna, as set forth in the declaration, to be sent and delivered to George H. McFadden & Brothers, Agency, at Pensacola, Florida, was received under the special condition in contract as follows: 'All messages taken by this company are subject to the following terms: To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half of the regular rate is charged in addition. It is agreed between the sender of the following message and this

company, that said company shall not be liable for mistakes or delays in transmission or delivery of any unrepeated message, beyond the amount received for sending same; nor mistakes or delays in transmission or delivery, or for non-delivery of any repeated message, beyond fifty times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruption in the working of the lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination. Correctness in the transmission of a message to any point on the lines of this company can be insured by contract in writing stating agreed amount of risk, and payment of premium thereon, at the following rates, in addition to the usual charge for repeating messages, viz.: one per cent. for any distance not exceeding one thousand miles, and two per cent. for any greater distance. No employee of the company is authorized to vary the foregoing.'

And the defendant says that the said message was an unrepeated message and was not repeated for the purpose of protecting against mistakes as contracted for by the defendant, wherefore the defendant says that there is no liability upon the part of the defendant."

The plaintiff demurred to the second plea on the grounds that it "is vague, indefinite, uncertain and insufficient, and states no sufficient defense to plaintiff's declaration; the rule and regulation and special condition of the contract referred to an unreasonable one and void."

The demurrer was sustained, and at the trial the plaintiff received a judgment for $133.50 and twenty dollars interest. A motion for a new trial was overruled and

the defendant took writ of error, assigning the following as errors: (1) Overruling the demurrer to the amended declaration; (2) sustaining the demurrer to the plea of the defendant, as filed, to the amended declaration; (3) in refusing to permit Frank Golson, a witness introduced by the defendant, to answer the question in words as follows, to wit: "How many rates are there?" (4) refusing to give the charge requested by defendant numbered 1, as follows: "The evidence having been submitted and the argument of counsel concluded, the court charges you that under the facts the plaintiff cannot recover and your verdict should be for the defendant;" (5) refusing to give the charge requested by the defendant numbered 2, as follows: "The evidence having been closed and the argument of counsel concluded, the court instructs you that under the undisputed facts the plaintiff can recover only the tolls paid for sending the telegram which is the basis of this suit to the extent of the amount proved to have been paid to the defendant company as tolls for transmitting the message, together with interest at the rate of eight per cent. per annum from the date the same was paid;" (6) refusing the give the charge requested by defendant numbered 5, as follows: "A party is not, in law, chargeable with results which do not naturally and reasonably follow as the consequences of his act;" (7) overruling the motion of the defendant for a new trial.

*Jno. E. Hartridge & Son,* for Plaintiff in Error;

*Benj. S. Liddon,* for Defendant in Error.

WHITFIELD, J., (*after stating the facts*): The declaration alleges that for reward and hire then and there paid,

the defendant telegraph company received from the plaintiff for transmission a message reading: "Bought for your account today's limit 175. Am doing my best to rush bill lading;" that said defendant in the transmission of said message negligently and carelessly substituted "one hundred and twenty-five" in the place and stead of "one hundred and seventy-five," whereby plaintiff lost great sums of money, under circumstances alleged in the declaration, wherefore plaintiff claims five hundred dollars damages.

This declaration was demurred to on several grounds, but as it stated a cause of action for at least nominal damages, the demurrer was properly overruled. In an action on the case for damages, if the declaration makes a case entitling the plaintiff to any recovery whatever, though it be only nominal damages, a demurrer will not lie thereto, even if the declaration claims other or greater damages than the cause may legally entitle the plaintiff to recover; demurrer not being the proper way to test the extent of the recovery to be had. Such questions are properly raised and settled by objections to testimony at the trial, or by instructions to the jury as to the law applicable to the points raised, or by requiring the declaration to be reformed under section 1043, Revised Statutes of 1892, section 1433 General Statutes of 1906, when it is calculated to embarrass a fair trial of the case. Borden v. Western Union Tel. Co., 32 Fla. 394, 13 South. Rep. 876; Jacksonville, T. & K. W. Ry. Co. v. Griffin, 33 Fla. 602, 15 South. Rep. 336; Tillis v. Liverpool & L. & G. Ins. Co., 46 Fla. 268, 35 South. Rep. 171; Cline v. Tampa Water Works Co., 46 Fla. 459, 35 South. Rep. 8, and cases cited; Muller v. Ocala Foundry & Machine Works, 49 Fla. 189, 38 South. Rep. 64; Western Union Tel. Co. v. Wells, 50 Fla. 474, 39

South. Rep. 838; Western Union Tel. Co. v. Barlow, 51 Fla. 351. 40 South. Rep. 491.

While the declaration does not specifically claim recovery of the tolls, damages are claimed amounting to $500.00, and if the declaration states any cause of action, damages not exceeding $500.00 could be recovered thereon. The declaration states a cause of action for at least nominal damages. No application was made for compulsory amendment of the declaration under the statute above referred to, and no testimony in support of the cause of action stated in the declaration was objected to. An instruction going to the merits of the declaration was asked for by the defendant and refused by the court. It will be considered later in this opinion.

The order sustaining the demurrer to the second plea is assigned as error. The second plea sets up a "special condition in contract," the purport of which is that the company "shall not be liable for mistakes or delays in the transmission or delivery or for non-delivery of an unrepeated message beyond the amount received for the same;" and avers that the message in this case was an unrepeated message. This plea was demurred to upon the grounds that it "is vague, indefinite, uncertain, insufficient and states no sufficient defense to the plaintiff's declaration; the rule and regulation and special condition in the contract referred to is an unreasonable one and void."

The authority, franchises and privileges which a telegraph company must have and exercise in serving the public, and without which it can not render the service, are conferred by law for the purpose of providing for the public the prompt transmission and delivery of a correct copy of messages; and the law authorzing the perform-

ance of the service for the public imposes upon the company the duty of properly rendering such service, and also imposes liability for any neglect of duty. A telegraph company is authorized by law to transmit messages with care and skill, and to deliver a correct copy of the messages received for transmission; and it is not authorized to carelessly or negligently transmit messages or to deliver an incorrect copy of messages received for transmission. In undertaking to render the public service by virtue of the franchises and privileges conferred upon it by law, a telegraph company assumes the duty to transmit messages with care and skill, and to deliver a correct copy of message received for transmission; and it does not assume or engage to carelessly or negligently transmit messages or to deliver an incorrect copy thereof. The compensation allowed by law to be received by a telegraph company for the transmission and delivery of a message is allowed and received for a careful and skillful transmission of the message and for the delivery of a correct copy of the message received for transmission; and such compensation is not allowed or received for a careless or negligent transmission of a message or for the delivery of an incorrect copy thereof.

The failure of a telegraph company to transmit and deliver a correct copy of a message received for transmission, is a failure to properly render the service it has undertaken to perform and is a breach of duty imposed by law, for which the company is liable in damages to the person injured thereby, unless the failure is legally excused, or unless the liability is affected by a valid stipulation. No excuse is offered in this case for the breach of duty alleged.

The "special condition in contract" averred in the

second plea as limiting the liability of the company, is that beyond the amount received for sending the message, the company "shall not be liable for mistakes and delays in the transmission or delivery of any unrepeated message," that is a message "telegraphed back to the originating office for comparson. For this (repeating) one-half of the regular rate is charged in addition." This tele graphing back is to the originating office of the company for comparison, and not to the sender; therefore it is for the benefit of the company in proper discharge of its duty to transmit a correct copy of the message delivered for transmission.

Under the second plea it is contended that the sender of the message, by not having the message repeated in accordance with the terms of the printed blank used by the sender in delivering the message, agreed to a limitation of the liability of the company as stated on the blank so used for mistakes in transmitting the message, to the amount received for transmission. The amount paid for sending the message was for transmitting it correctly as the duty of the company required it to do. If because of the negligence of its employees the company failed to transmit the message correctly, it has failed in the performance of its duty, and is liable for such failure notwithstanding the provisions printed on its blanks. In receiving the message and taking the price of transmittal the company engaged to send and deliver the message correctly, and if it fails in doing so without legal excuse, it cannot avoid its liability for such failure on the ground that the sender in using the blank containing a provision limiting the liability of the company unless the sender should pay for repeating the message to the originating office for comparison, when the sender has already paid for the proper

transmission and delivery of a correct copy of the message. If the duty imposed by law and assumed by the company to carefully and skillfully transmit and deliver a correct copy of the message be properly performed, there would be no necessity for the message to be "telegraphed back to the originating office for comparison." If repeating the message "to the originating office for comparison" is necessary for the transmission and delivery of a correct copy of the message, it is the duty of the company to do this in order to properly render the service it undertook to do and received compensation for doing. The company is allowed by law to charge a reasonable compensation for the service it renders, and the amount charged for transmitting the message should be a reasonable compensation for the complete performance of the service undertaken by the company, i. e., the transmission and delivery of a correct copy of the message received for transmission. See Jones on Telegraph and Telephone, sections 377-378.

The plea does not respond to the allegation of the declaration that the company carelessly and negligently transmitted and delivered an incorrect copy of the message received for transmission. No excuse for failure to perform the duty assumed by the company is averred; nor does the plea aver any valid stipulation avoiding liability for the alleged negligence and carelessness of the company in the discharge of its duty by failing to transmit and deliver a correct copy of the message received by it for transmission. This being the duty imposed by law and assumed by the company, it cannot avoid liability for the nonperformance of such duty because of the negligence of its employees, by averring a stipulation relieving the company, prepared by it and set out in the blank form

used by the sender in delivering the message for transmission. The duty of the company imposed by law and assumed by it is to use due care and skill in transmitting messages and in delivering a correct copy thereof, and its liability for negligence or carelessnesss in transmitting messages and in delivering a correct copy cannot be affected as stated in such stipulation. Western Union Tel. Co. v. Champlee, 122 Ala. 428, 25 South. Rep. 232; Western Union Tel. Co. v. Short, 53 Ark. 434, 14 S. W. Rep. 649; Western Union Tel. Co. v. Blanchard, 68 Ga. 299; Western Union Tel. Co. v. Norris (Tex. Civ. App.), 60 S. W. Rep. 982; Brown v. Postal Tel. Co. 111 N. C. 187, 16 S. E. Rep. 179, 17 L. R. A. 648; Western Union Tel. Co. v. Eubank, 100 Ky. 591, 38 S. W. Rep. 1068, 36 L. R. A. 711; Thompson v. Western Union Tel. Co., 64 Wis. 531, 25 N. W. Rep. 789, S. C. 54 Am. Rep. 644; Page on Contract, Sec 366; Jones on Telegraph and Telephones, Secs. 265, 376, and authorities cited; 27 Am. & Eng. Ency. Law (2nd ed.) 1043, and authorities cited.

In the case of Atlantic Coast Line Ry. Co. v. Dexter & Conner, 50 Fla. 180, 39 South Rep. 634, referred to by counsel for plaintiff in error, on the subject of limiting by contract the liability of a common carrier, the record shows that the contract related to the transportation of live stock under the care of their owner and was limited to the injury "which shall not affirmatively appear to have been caused by the negligence of said railway or its connecting lines." The value of the live stock agreed upon was not arbitrarily fixed as the amount of the charge for the transportation, but an actual value was agreed on, and there was no showing that such agreed value was unreasonable. Even in that case where the service was peculiar to live stock and the limitation as to the

amount of liability did not appear to be unreasonable, there was no attempt to limit the liability of the common carrier for its negligence to the price paid for the service undertaken as the plea in this case seeks to do.

The peculiar conditions applicable to the transportation of live stock under the care of the owner widely distinguish the service from that rendered by a telegraph company, which has absolute control of messages it transmits and is held to a contemplation of the consequences involved in the terms of the message taken with knowledge of other relevant circumstances affected by the message and known to the company.

The service rendered by a railroad company in the transportation of live stock under the personal care of the owner thereof is essentially different from the service rendered by a telegraph company in the transmission of messages. Where the value of the live stock being transported is agreed upon by the carrier and the shipper as the limit of the carrier's liability for losses from causes other than the negligence of the carrier, and the valuation does not appear to be unreasonable or unduly imposed, such a limitation of the liability of the carrier may be permitted under circumstances justifying it. But a telegraph company has absolute possession and control of message delivered to it for transportation. The duty of the company is to transmit and deliver a correct copy of the message. The company is liable for the proximate consequences of its negligence to the extent disclosed by the terms of the message and other circumstances known to the company when the message was presented for transmission. To permit the telegraph company by a stipulation printed upon its blanks used in presenting messages

32—S C

for transmission, to limit its liability for negligence to the amount paid for transmission would enable the company to avoid responsibility for its own wrong in rendering a service in which the sender of the message has no part or control where the losses probably consequent upon the wrong may be enormously out of proportion to the amount paid for a correct transmission. A sound public policy will not permit such an abuse of the authority given by law to a company for the benefit and not for the detriment of the public. Such a stipulation should not be enforced.

In this case the law imposed and the telegraph company assumed the duty of transmitting and delivering with care and skill a correct copy of the message received by the company for transmission. The declaration alleges that the company carelessly and negligently transmitted and delivered an incorrect copy of the message, to the plaintiff's injury. The second plea seeks to avoid the company's liability for the failure to properly perform its duty, in carelessly and negligently· transmitting an incorrect copy of the message, by averring a "special condition in contract" limiting such liability to the amount received for sending the message. This is unreasonable upon its face. The defendant cannot by such "special condition in contract" relieve itself of liability resulting from the negligence alleged in the declaration in the performance of a duty imposed by law and assumed by the company in its capacity as a transmitter of messages for the public. The plea, therefore, did not present a legal defense to the action, and it was properly overruled on demurrer.

In view of the principles above announced it was immaterial whether the defendant had one or more rates of toll; and consequently there was no error in overruling

the question, "How many rates are there?" which was assigned as error.

The only plea before the jury was the general issue, and as there was evidence showing the liability of the defendant, the affirmative charge numbered 1 requested by the defendant was rightly refused.

Exception was taken to, and error is assigned on, the refusal of the court to give the following charge requested by the defendant: "2. The evidence having been closed and the argument of counsel concluded the court instructs you that under the undisputed facts the plaintiff can recover only the tolls paid for sending the telegram which is the basis of this suit to the extent of the amount proved to have been paid to the defendant company for tolls for transmitting the message, together with interest at the rate of eight per cent annum from the date the same was paid.

The declaration alleges and the proof shows that George H. McFadden & Brothers, Agency, of Pensacola, Florida, had agreed to take and receive from John Milton, Jr., the plaintiff, of Marianna, Florida, at 10 cents per pound, all the cotton of middling grade bought by plaintiff on a given day upon plaintiff's reporting by wire the number of bales so bought on said day; that on September 24th, 1904, the plaintiff delivered to the defendant the following message: "Marianna, Florida, 9-24-04. George H. McFadden & Brothers, Agency, Pensacola, Florida: Bought for your account today's limit 175. Am doing my best to rush bill lading. John Milton, Jr." That the words "one hundred and seventy-five" meant 175 bales of cotton which plaintiff had that day purchased for said agency; that defendant in transmitting said message negligently and carelessly substituted and used the words "one

hundred and twenty-five" in the place and stead of the words "one hundred and seventy-five;" that said agency being only advised of the purchase of 125 bales of cotton by plaintiff, by reason of the defendant's said error and negligence, would only receive as purchased on said day 125 bales of cotton, and rejected the other 50 bales; that the market price of cotton declined and the 50 bales brought only 9½ cents per pound, to the plaintiff's loss of $133.50. It is further alleged that defendant well knew that the George H. McFadden & Brothers Agency was engaged in dealing in cotton and that the plaintiff had been engaged in shipping cotton to and buying cotton for said agency. The proofs show that the agent of the telegraph company, who was also the agent of the railroad, knew plaintiff's business and had sent similar messages daily and he had to sign the bills of lading as agent for the railroad; that said agent knew McFadden Brothers were cotton buyers and that the plaintiff had an agreement with them to buy cotton for them on the limits given plaintiff each day by means of the defendant telegraph company.

In cases where losses have been sustained by reason of the negligence of another, damages may be recovered for losses that would likely or probably result, where such negligence is a proximate or directly contributing cause of the loss, and the plaintiff is not at fault. The damages must be for losses that would likely or probably result and did result from the proximate or directly contributing negligence of the defendant, and the plaintiff must not be at fault. If there is an independent efficient cause intervening between the negligence of the defendant and the result or loss, the defendant's negligence is not a proximate or directly contributing cause. If the plaintiff is not at fault and the

negligence of the defendant was one of the proximate or directly contributing causes, the defendant is liable for the loss without reference to other proximate or directly contributing causes where they do not intervene between the negligence of the defendant and the result or loss. A proximate cause is one that leads to or produces, or directly contributes to, producing the result or loss. If the loss is not such as would likely or probably result from the negligence of the defendant he is not liable, since he can ordinarily be held responsible only for the probable results of his negligence, which he should have foreseen. See Moore v. Lanier, 52 Fla. 353, 42 South. Rep. 462; Jacksonville, T. & K. W. Ry. Co. v. Peninsular Land, Transp. & Manuf'g. Co., 27 Fla. 1, 9 South. Rep. 661, 17 L. R. A. 33; Janes v. City of Tampa, 52 Fla. 292, 42 South. Rep. 729; 21 Am. & Ency. Law (2nd ed.) 485-496.

In an action in tort against a telegraph company for the breach of a public duty in negligently transmitting an incorrect copy of a message delivered to it for transmission, the damages that can be recovered are for the loss or injury sustained by the plaintiff as a proximate consequence of the defendant's negligent act, which consequence the parties contemplated, or should have contemplated, as probably to follow from a breach of the duty. An act is a proximate cause when it leads to or produces, or contributes directly to producing, a result. When a result might have been reasonably expected as likely or probably to directly follow the performance or non-performance of an act, the party performing, or failing to perform, the act is responsible for the loss to another resulting proximately from the performance or non-performance of the act. Jones on Telegraph and Telephones, Sec. 519 *et seq.,* and authorities cited; 3 Souther-

land on Damages (3rd ed.), Sec. 961; 27 Am. & Eng. Ency. Law (2nd ed.) 1059 *et seq.;* Joyce on Electric Law, Sec. 945.; 6 Current Law, 1673; McCarty v. Western Union Tel. Co., 116 Mo. App. 441, 91 S. W. Rep. 976; Western Union Tel. Co. v. Love-Banks Co. (Ark.), 83 S. W. Rep. 949.

In the case of Hocker v. Western Union Tel. Co., 45 Fla. 363, 34 South. Rep. 901, this court said: "It is urged that the damages are too speculative, remotive, contingent and conjectural, and all dependent upon elements uncertain and contingent in their character. This contention is not well founded. The amount claimed is the difference between a certain price at which plaintiff's contract was sold and a certain definite and determined price at which it would have been sold had the messages been properly delivered. It is true that until the actual sale was made the ultimate result of the mistake in the message was contingent and speculative, being dependent upon the fluctuations of the market. This uncertainty was determined, however, by the making of the sale as finally effected, and will no more bar recovery of the damages sustained in this case than in one where a defendant should refuse to take goods which he had contracted to purchase, and which are subsequently sold on a falling market to another for a less price, the amount of which cannot be predicted until the sale is made. 2 Thompson on Negligence, No. 2461."

It appears that in this case the McFadden Agency would have been obliged under the contract with the plaintiff to take 175 bales of cotton at 10 cents per pound if the defendant had correctly transmitted the message it received from plaintiff for transmission. Because of the negligence of the defendant in transmitting the message incorrectly, the McFadden Agency was obliged to take only 125 bales

of cotton at 10 cents a pound, and consequently such neg-
ligence is the proximate cause of the loss to the plaintiff
of $\frac{1}{2}$ cent a pound on 50 bales of cotton which sold for $9\frac{1}{2}$
cents per pound, the best market price; and, from the alle-
gation of the declaration and the proofs it appears that
such loss is one that the parties knew of or had reason to
know would probably follow an incorrect transmission of
the message.   If the defendant's negligence in the per-
formance of its duty was a proximate cause of the loss to
the plaintiff, and the plaintiff is not at fault, he may re-
cover for the loss sustained that the parties contemplated,
or, under the circumstances, should have contemplated,
as likely and probably to result from such negligence.

It is urged that the plaintiff cannot recover damages in
excess of the toll collected, because it is not shown that
the error in the transmission of the message was the
proximate cause of the loss, as it does not appear that
plaintiff "made any attempt to secure a better price for
this cotton, or that he offered the same to any other person,
or that he could not by holding it have obtained a better
price."   The contract of the plaintiff with the McFadden
Agency was that the agency would take and receive from
the plaintiff all the cotton he could buy at ten cents per
pound upon a basis of middling cotton upon the plaintiff
reporting by wire to said agency the number of bales so
bought on said day.   The loss of the plaintiff could not
have been avoided, because the agency was not bound to
take more cotton than was reported to it by telegram, and
as the market declined a sale to others at ten cents per
pound was impracticable and the 50 bales were sold at the
best market price for $9\frac{1}{2}$ cents per pound.   The plaintiff
was not required to hold the 50 bales for a rise in the
market, but he had a right to expect the defendant to

properly perform its duty of correctly transmitting the telegram so as to bind the McFadden Agency to take the entire 175 bales at that day's price even if the market declined; but as the message was incorrectly transmitted, and as the McFadden Agency was bound to take and did take at ten cents per pound only the lesser number of bales stated in the telegram as received by it, the loss to the plaintiff by the refusal of the McFadden Agency to take at the given price more than the 125 bales stated in the message received, was caused directly by the failure of the telegraph company to correctly transmit the message. The difference in the price was not within the control of the plaintiff. The message contained no element of speculation or contingency. The plaintiff was not buying for speculation, but bought at a stated price for another who was to take at that price all the cotton reported by wire that day pursuant to an agreement. A correct report was filed for transmission by the defendant telegraph company, but the company incorrectly transmitted it. The plaintiff would have had a right to hold the McFadden Agency to take the 175 bales at 10 cents per pound notwithstanding a decline in the market price, if a correct copy of the message filed had been transmitted and delivered, and no loss to plaintiff would have resulted. But the message was not correctly transmitted by the defendant telegraph company, as it reported 125 bales instead of 175 bales. The McFadden Agency was not bound to take at ten cents per pound any more cotton than was reported to it by wire that day, and as the market declined $\frac{1}{2}$ cent a pound and plaintiff was paid only $9\frac{1}{2}$ cents per pound for 50 bales, the same being then the highest market price, loss resulted to the plaintiff directly from failure of the defendant telegraph company to correctly transmit the message. This

loss was one that the parties could and should have known from the telegraph and other facts known to the company would probably result from the negligence of the defendant. The amount of recovery is the difference between the price the McFadden Agency would have paid the plaintiff for the fifty bales of cotton if the message had been correctly transmitted and the highest market price paid the plaintiff for the 50 bales of cotton. See Thompson v. Western Union Tel. Co., 64 Wis. 531, 25 N. W. Rep. 789; Manville v. Western Union Tel. Co., 37 Iowa 214; Western Union Tel. Co. v. Nye & Schneider Grain Co., 70 Neb. 251, 97 N. W. Rep. 305; Reed v. Western Union Tel. Co., 135 Mo. 661, 37 S. W. Rep. 904, 58 Am. St. Rep. 609; Western Union Tel. Co. v. Haman, 2 Tex. Civ. App. 100, 20 S. W. Rep. 1133; Western Union Tel. Co. v. Spivey, 93 Tex. 308, 83 S. W. Rep. 364. There is no showing that the plaintiff did not act in good faith and get all that could have been obtained from the sale of the 50 bales of cotton left on his hands by reason of the incorrect transmission of the message. On the contrary, it is shown that the 50 bales were sold for the best market price.

It is contended that the terms of the message did not indicate that the damages claimed were in the contemplation of the parties. The declaration alleges that the defendant telegraph company well knew that the McFadden Agency was engaged in dealing in cotton and that the plaintiff had been engaged in shipping cotton to and buying cotton for said agency. It is also shown in evidence that the agent of the telegraph company was also the agent of the railroad company; that he had transmitted similar messages daily and he had to sign bills of lading for the railroad. It also appears that this agent knew the business of the plaintiff with the McFadden Agency

as to which messages had been sent and bills of lading signed by the agent. It is a matter of common knowledge that the price of cotton fluctuates. The company appears to have well known of the buying and shipping of cotton by the plaintiff for the agency. The telegram was addressed to the agency and its terms indicated its importance and probable reference to shipment of cotton about which defendant knew.

The terms of the message and the circumstances known to the company when the message was presented for transmission were reasonably sufficient for the defendant to contemplate therefrom that the losses sustained by the plaintiff would probably result from a negligent transmission of the message. It was not essential that the particular loss sustained was contemplated, but the company is liable if the loss sustained should have been contemplated as a probable and proximate result of the negligence. Jones on Telegraphs and Telephones, Secs. 519-529; Western Union Tel. Co. v. Edsall, 74 Tex. 329, 12 S. W. Rep. 41, S. C. 15 Am. St. Rep. 835.

Under the circumstances the terms of the message were sufficient to put the defendant upon notice that matters of considerable value were involved, and it was bound to exercise care accordingly. Western Union Tel. Co. v. Edsall, *supra*. If nothing of value was involved the defendant was by law held to a proper discharge of its duty by transmitting and delivering a correct copy of the message received by it for transmission. The knowledge of the defendant's agent of the plaintiff's business and the terms of the message amply indicated its importance. The damage here alleged is the proximate result of defendant's negligence, and the law imposes liability for such negligence. See Jones on Telegraphs and Telephones, Sec. 538.

The charge numbered 2 requested by defendant was properly refused.

The decline in the market price of cotton was not an independent efficient cause intervening between the negligence of the defendant and the plaintiff's loss. If the message had been correctly transmitted the decline in the market price of cotton would not have resulted in loss to the plaintiff. Even if the decline in the price were a directly contributing cause of the loss, the correct transmission of the message would have avoided a loss notwithstanding the decline in the price, therefore the negligence of the defendant was at least a proximate cause of the loss.

There is no evidence that an independent efficient cause intervened between the negligence of the defendant and the result or loss to the plaintiff, therefore the court did not err in refusing to give the following charge: "If the telegraph company is in default but their default is made harmful to a party only by some other intervening cause, the company is not liable."

It does not appear from the allegations or the proofs that the injury complained of was the result of any independent intervening cause. No wrong doing, negligence or lack of good faith on the part of the plaintiff appears. The defendant telegraph company failed to properly perform its duty by not transmitting a correct copy of the message received by it for transmission. Such failure has resulted in loss to the plaintiff without his fault and without the intervention of any independent cause, and the defendant is, therefore, liable in damages to the amount of the loss directly sustained by the plaintiff that would probably have resulted and did result from the de-

fendant's negligence.   Damages under this rule have been adjudicated to the plaintiff.

This disposes of all the points argued for the plaintiff in error.

The verdict and judgment awarding damages are sustained by the allegations and proof, and, as no error is made to appear, the judgment is affirmed.

SHACKLEFORD, C. J., and COCKRELL, J., concur;

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.