WESTERN UNION TELEGRAPH COMPANY v. NYE & SCHNEIDER COMPANY.

FILED NOVEMBER 5, 1903.  No. 12,790.

Telegraph Company: NEGLIGENCE: DAMAGES. Where the negligent delay of a telegraph company, in the delivery of a message delivered to it for transmission by the plaintiff, results in the loss to the plaintiff of a sale of a quantity of corn at a price above the market value of the corn at the time and place it would

have been delivered had such sale been made, the measure of damages is the difference in value between the price the plaintiff would have received for the corn, had the sale been made, and the market value of the corn at such time and place of delivery, unaffected by the price at which the plaintiff may have disposed of the corn after that time.

ERROR to the district court for Dodge county: JAMES A. GRIMISON, JUDGE. *Affirmed.*

*W. W. Morsman* and *Edgar M. Morsman, Jr.,* for plaintiff in error.

*W. J. Courtright* and *S. S. Sidner, contra.*

ALBERT, C.

This action was brought by Nye & Schneider Company against the Western Union Telegraph Company to recover damages sustained by the former, by reason of the negligent delay of the latter in transmitting a telegram.

It sufficiently appears, from the pleadings and the evidence, that the plaintiff, whose home office is at Fremont, had a branch office at Morehead, Iowa, where it was engaged in the grain business. On the 13th day of June, 1901, plaintiff's agent, in charge of the business at the latter place, had a cash offer of 35 cents a bushel for 5,000 bushels of corn, which the plaintiff had on hand at that point, which was to stand open for acceptance until 7:30 P. M. of that day. The agent communicated the offer to the plaintiff at its home office. On receipt of such communication, the plaintiff, on the same day, delivered a message to the defendant for transmission to the agent of the former at Morehead, Iowa, directing him to accept the offer. Had the defendant used due diligence in the transmission of the message, it would have reached the agent in time to enable him to take advantage of the offer and close the sale before the time for which the offer was to hold good expired. But, by reason of the negligent delay in the transmission, it did not reach him until after 7:30 of that day; in consequence whereof, the plaintiff failed to

make the sale. Had the offer been accepted within the time fixed, the party making the offer would have paid the price in cash, and the corn would have been delivered to him at Morehead. The market value of the corn on that day, and for some time thereafter, was 32 cents a bushel.

Afterwards, the price advanced, so that between the 24th day of June and the 5th day of November following, the plaintiff disposed of the corn, at retail, at a higher price than that specified in the offer hereinbefore mentioned.

A trial to the court, without a jury, resulted in a finding for the plaintiff, the court adopting as the measure of damages, the difference between the price offered for the corn on the 13th day of June, 1901, and its market value at Morehead on that day, and gave judgment accordingly. The defendant brings error.

The defendant contends that the measure of damages adopted by the trial court is erroneous as applied to the facts in this case, because the plaintiff, having eventually sold the corn at a higher price than that accepted by the message in question, suffered no loss, and therefore sustained no actual damages by reason of the delay in the delivery of the message. At first sight, this contention appears reasonable, but we do not believe it will bear analysis. The action is one for breach of contract, and the breach relied upon is the failure of the defendant to transmit and deliver the message within what, under all the circumstances, would have been a reasonable time. In such cases, the general rule is that, so far as it can be done by money, the injured party is to be placed in the same situation in which a performance of the contract would have placed him. But it would be impossible to follow the labyrinth of remote results and consequences of a breach of contract, and determine either the ultimate situation of the party as affected thereby or what such situation would have been had the contract been performed. The law therefore takes into account only proximate results, and disregards such as are remote or are the product of intervening or independent causes. Hence the situation of the

injured party, which forms the basis of the comparison, must be his situation when the breach of contract occurred, and before remote or independent causes had intervened to change it. His situation after that time can never be material as an ultimate fact in the case because, after the intervention of such causes, it can never be known with any reasonable degree of certainty to what extent it is due to causes only remotely connected with the breach of contract or wholly independent of it.

In the present case, although it is questioned by the defendant, we think the evidence is ample to sustain a finding that the delivery of the corn, and the payment of the price, would have followed immediately upon the delivery of the message, had it been delivered in due time. Hence, upon the failure to deliver the message, the plaintiff had 5,000 bushels of corn which, instead of being worth $1,750 as it would have been, had the message been duly delivered, was worth only $1,600. In other words, the plaintiff's situation, upon the defendant's failure to deliver the message and before any remote or independent causes had intervened to change it, was such that it would have required $150 to make it what it would have been, had the message been delivered. The subsequent rise in the market and sale of the corn on such market are no more proximate results of the breach of contract or the contractual relations of the parties, than a subsequent decline in the market and sale of the corn at a loss would have been. The same principle that would have relieved the defendant from increased liability, had the market declined, excludes it from participation in the profits resulting from its advance. In neither case would it be possible to determine to what extent the result was due to the intervention of remote or independent causes.

Besides, as a matter of pure justice between the parties, we are satisfied that the rule adopted by the trial court is right. Had the plaintiff, immediately upon the failure to deliver the message, sold the corn at the then market price, the measure of damages, in the absence of special circum-

stances, would have undoubtedly been the difference between such price and what the plaintiff would have received for it, had the message been delivered in due time. Every hour it held the corn, after its cause of action arose, was at its own risk, because it will not be claimed that the damages recoverable would have been increased by the loss or destruction of the corn or its decline in price, after that time. Those are risks incident to the business of the merchant, and which he takes into account in estimating his profits and deciding upon a cause of action. Holding the corn for a better market, also involved interest on the capital invested, storage, the negotiations of another sale and other outlays, to say nothing of the foresight and energy necessary to conduct the venture to a successful issue. Is there any good reason why the defendant, who risked nothing, invested nothing and did nothing in the venture, should be permitted to share in the profits? We think not. We are aware that a different conclusion was reached in *Houston, etc., Telegraph Co. v. Davidson, Hardeman & Co.*, 15 Tex. Civ. App. 334, cited by defendant, but it is not supported by any line of reasoning, nor is it entirely clear that the point was necessarily involved in the case. But however that may be, it does not commend itself to us as a sound rule of law, and we must therefore decline to follow it. The defendant also cites *Mickelwait & Young v. Western Union Telegraph Co.*, 13 Ia. 177. In that case, a buyer delivered a message to the defendant, a telegraph company, for transmission to the plaintiff, which contained an offer to pay 20½ cents a bushel for corn. Through a mistake of the defendant, the message, when delivered to the plaintiff, read 21½ cents a bushel. On receipt of the message, the plaintiff went into the market and filled the order, paying 21 cents a bushel for a part of the corn and 20 cents for the remainder. The purchaser refused to pay more than 20½ cents a bushel for the corn, and it was delivered to him at that price. In passing on the case, Waterman, J., said:

"Plaintiffs claim a loss of profits. If this were a case

where loss of profits might be considered, still we think they could not recover. The mistake in the message caused them no loss of profits; for, if it had been correctly transmitted, they would have been in the same situation they now are. They obtained from Russell the exact price fixed in his message and as it should have been sent. There is no showing that the work of procuring the corn was worth more than the margin of profit received."

We think that case is clearly distinguishable from the one at bar, and is not in point. In that case, there was nothing to show that the plaintiff would have been in any better position had the message been correctly transmitted; it does not appear that they paid any more for the corn to fill the order by reason of the mistake, nor that, by reason of the mistake, they did anything they would not have done had it not occurred.

*Hibbard v. Western Union Telegraph Co.,* 33 Wis. 558, is another case cited by the defendant. The reasoning in that case seems to us to tell against the defendant and to support the conclusion heretofore reached by us in the present case. The same may be said of *Western Union Telegraph Co. v. Hall,* 124 U. S. 444, and *Squire v. Western Union Telegraph Co.*, 98 Mass. 232.

But the defendant further contends that the plaintiff did not learn of the failure of the sale, by reason of the nondelivery of the message, until some three days or more thereafter, and that, under such circumstances, it was necessary for the plaintiff to show the value of the corn at the time it learned that the sale had thus failed. In support of this contention the Texas case above referred to is again cited. We do not deem it necessary, in this case, to determine whether the rule hereinbefore approved would be affected by such circumstances, because, were we to adopt the modification suggested, the result in this case would be precisely the same. The plaintiff is a corporation, and acts only through its agents. Its agent at Morehead, through whom the negotiations for the proposed sale were conducted, the moment the message was not delivered

within the required time, knew that the sale had failed. What he knew, the plaintiff knew. Hence, the failure of the sale and knowledge on the part of the plaintiff that it had failed were contemporaneous, and the market price of the corn when the sale failed and when the plaintiff learned that it had failed would be the same.

It is therefore recommended that the judgment of the district court be affirmed.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

DUFFIE, C., concurring.

I fully concur in the opinion of Judge ALBERT heretofore filed in this case. The facts are sufficiently set forth in his opinion. It is earnestly insisted by the plaintiff in error that because the Nye & Schneider Company finally succeeded in disposing of its corn at an advance over the offer made by the proposed purchaser it was not damaged by the failure of the defendant in error to transmit and deliver the message accepting the offer. On the contrary it is said that the Nye & Schneider Company profited by the neglect of the plaintiff in error and was benefited thereby. It has also been suggested that, before defendant in error could recover, it should have disposed of the corn on the market at the best price which could be obtained and that, until such sale was made, no cause of action accrued to it.

I am not disposed to accept these views. Had the message accepting the offer been promptly delivered, a sale of the corn at a price one and one-half cents above the market value would have been consummated on the evening of June 13, 1901. A failure to deliver the message prevented the sale, and the consequence was that the defendant in error had on hand 5,000 bushels of corn, which would otherwise have been disposed of at a profit of $75

above the market price at that date. It is clear, therefore, that on the evening of July 13 it had been damaged to the extent of $75. A right of action accrued to it immediately for this amount. We know of no principle which would deprive it of this right of action, or which would give the plaintiff in error the benefit of a rise in the corn market, or allow such advance to be shown in mitigation of damages. The rule is aptly stated in 1 Sutherland, Damages (3d ed.), sec. 158, where it is said:

"There can be no abatement of damages on the principle of partial compensation received for the injury where it comes from a collateral source, wholly independent of the defendant, and is as to him *res inter alios acta.*"

There appears to be a dearth of authorities on the exact question involved but, in my opinion, the same principle and the same measure of damage should be applied that obtains in the case of a purchaser of personal property who refuses to accept the goods purchased, at the time fixed for the delivery. In such case, the authorities all agree that a right of action for damages arises in favor of the vendor for the injury or loss he has sustained by reason of the breach of the contract, and this is ordinarily or generally the difference between the market value of the property at the time and place of delivery, and the price fixed by the contract. *Funke v. Allen,* 54 Neb. 407; *Lincoln Shoe Mfg. Co. v. Sheldon,* 44 Neb. 279.

It is true that the vendor, on refusal of the vendee to accept, has a right, if he so elects, to resell the goods, but this seems to be a method only of ascertaining their market value and the extent of the damages. Sutherland, in his work (sec. 647), has given the rule established by the decided cases, as follows:

"An executory agreement which requires a subsequent acceptance of the property by the buyer, to consummate the sale does not become a complete bargain and sale so as to vest the title in him, if he refuses to accept it. In such case the vendor is entitled to recover damages only to the extent of his actual injury from the failure of the vendee

to fulfill his contract, which is ordinarily the difference between the contract price and the market value, at the time and place of the breach, with interest. * * * This may be ascertained and fixed by a resale within a reasonable time, and after notice to the vendee of the vendor's intention to resell, taking all proper measures to secure as fair and favorable a sale as possible. * * * The resale is made on the theory (which is a mere legal fiction) that the property is that of the vendee retained by the vendor as a means of realizing the contract price; he acts as the agent of the vendee, and deducts from the proceeds all the expenses incurred. * * * After notice of the vendor's intention to resell, no notice of the time and place of the resale is required to be given, but it must be made according to the usage of trade. * * * If the net proceeds of the sale are less than the contract price, he may recover the deficiency in an action on the contract."

Benjamin, Sales (4th ed.), sec. 758, says:

"When the vendor has not transferred to the buyer the property in the goods which are the subject of the contract * * * as where the agreement is for the sale of goods not specific, or of specific goods which are not in a deliverable state, or which are to be weighed or measured before delivery—the breach by the buyer of his promise to accept and pay can only affect the vendor by way of damages. The goods are still his. He may resell or not, at his pleasure. But his only action against the buyer is for damages for non-acceptance; he can in general only recover the damage that he has sustained, not the full price of the goods. The law, with the reason for it, was thus stated by Tindal, C. J., in delivering the opinion of the exchequer chamber in *Barrow v. Arnaud,* 8 A. & E., n. s. (Eng.) *595: 'Where a contract to deliver goods at a certain price is broken, the proper measure of damages in general is the difference between the contract price and the market price of such goods at the time when the contract is broken, because the purchaser, having the money in his hands, may go into the market and buy. So, if a contract

to accept and pay for goods is broken, the same rule may be properly applied; for the seller may take his goods into the market and obtain the current price for them.' "

It is conceded that, by keeping the corn, defendant in error kept it at its own risk. In other words, had the price of corn gone down in the market, the Nye & Schneider Company would have had to bear the loss, whatever it might be, and could recover from the plaintiff in error only the difference between the price offered and the fair market value of the corn, giving it a reasonable time within which to dispose of the same. The corn being kept at defendant's own risk entitles it, certainly, to any advance in the price while so held. The plaintiff in error can not claim the benefit arising solely from a risk assumed by defendant in error and for which plaintiff in error could in no wise, and under no circumstances, be made liable. This principle is fairly established in *Bridgford v. Crocker,* 60 N. Y. 627, where it is said:

"Upon the failure of a vendee to perform an executory contract for the purchase of chattels, the vendor may elect to tender the property and sue for the contract price, or to retain the property as his own, and recover, as his damages for the breach, the difference between the market value at the time the vendee was to receive delivery, and the contract price. If he elect the latter, and the property subsequently rises in value in the market, the vendee can not avail himself thereof, but the vendor is entitled to the benefit."

A sale of the corn at an advance over the market price was lost through the negligence of the plaintiff in error. Had the defendant in error, on learning of this neglect, offered the corn on the market and sold it for the market price, no one disputes the liability of plaintiff in error for the difference between the price so obtained and the offer made by the proposed purchaser; but, because the defendant in error exercised its right to hold the corn at its own risk, the telegraph company claims the benefit of the advance in value which finally obtained; in other

words, it seeks to take advantage of a venture in which it took no part and of which it assumed no risk; the benefit of a hazard from which it could not be injured. The risk was that of the defendant in error and the advantage arising therefrom belongs to it alone.