## A. Engelhard & Sons Company v. Western Union Telegraph Company.

(Decided October 2, 1917.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Telegraphs and Telephones—Liability for Failure to Promptly Transmit Message When Wires Are Down.—If a telegraph company's line is out of order or not working, and knowing this fact it accept a message for transmission over its line without notifying the sender, it assumes responsibility for loss occasioned by the delay, although such failure may be due to causes beyond its control. If it desires to be excused for its failure to promptly transmit the message it must inform the sender that his message cannot be promptly sent.

2. Telegraphs and Telephones—Liability for Failure to Promptly Deliver Message—Not Responsible for Subsequent Delay Caused by Misunderstanding of Parties.—While a telegraph company was responsible to the sender for the loss sustained by him on account of its failure to promptly transmit a message, its liability on this account could not be increased by the failure of the sender to understand an ambiguous message relating to the same transaction subsequently sent him by the sendee.

3. Telegraphs and Telephones—Measure of Damages for Failure to Promptly Deliver Message—Market Value.—Where there is delay in the transmission of a message directing a sale of property, the measure of damage is the difference between what the property could have been sold for if the message had been promptly delivered and the price at which it could be sold if there was a market when the negligence was discovered. If the property has no market value when the negligence is discovered, then the measure of damage is the difference betwen the price at which the property could have been sold if there had been no delay in delivering the message and the best price at which the property could thereafter be sold by the exercise of a reasonable diligence, including the expense of keeping it.

4. Telegraphs and Telephones—Liability for Failure to Deliver Message—Duty of Sender to Minimize Damage.—When the sender of a message involving the sale of property discovers that there has been delay or mistake in its transmission, he must exercise reasonable care to minimize the damage.

DODD & DODD for appellant.

RICHARDS & HARRIS and ALBERT T. BENEDICT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On August 10, 1914, A Engelhard & Sons Co., of Louisville, Ky., had in the possession of Arnold Dorr & Company, of New York, one thousand sacks of coffee, and on this date, at 2:30 p. m., Victor H. Engelhard, acting for them, delivered to the Western Union Telegraph Co. at Louisville, Ky., the following telegram for transmission to Arnold Dorr & Company at New York: "Close our September trade. Do the best you can."

There is no dispute about the facts that this telegram was a direction to the New York brokers to sell the thousand bags of coffee. It further appears that at the time the telegram was delivered to the Louisville office the telegraph company's wire to New York was not working on account of storms that had put it out of commission. And is also shown that Engelhard being anxious that the telegram should be sent promptly, and in order to make sure that there would be no delay in its transmission, called up on the telephone the operator in charge of the Louisville office and inquired if the line to New York was clear, and on being advised that it was, told her to send the telegram immediately. It appears, however, that on account of the trouble with the wires the telegram was sent by the Louisville office at approximately 3:00 p. m. to the Indianapolis office, where it was relayed at 4:09 p. m. to New York and delivered to Arnold Dorr & Company at 5:50 p. m., New York time, or at 4:50 p. m., Louisville time. It was further shown that in the ordinary course such a telegram should have been sent from Louisville to New York in about eleven minutes; or, in other words, if it had been promptly dispatched it would have reached New York, by 3:45 p. m., New York time, when, in fact, it did not reach there until more than two hours later, or until after the New York coffee market had closed for that day.

On receipt of this telegram, Arnold Dorr & Company sent a telegram to A. Engelhard & Sons Co. reading: "Your telegram recd. five fifty Sept. closed eight twenty will act on your order tomorrow unless we hear to the contrary." This telegram was received by Engelhard & Sons Co. between eight and nine on the morning of August 11th. On receiving this telegram Victor Engelhard, under the belief that his telegram had been duly received in New York, understood it to mean that pursuant to his order the New York firm had sold on August 10th 550 bags at $8.20 per hundred pounds and that the

balance would be sold on the next day, and thereupon telegraphed Arnold Dorr & Company to hold the balance of the coffee for further orders, and this telegram was received by the New York brokers on August 11th at 10:20 a. m. They immediately wired appellant that they did not understand his telegram, and this message was received by Engelhard on August 11th at 12:54 p. m. Upon its receipt Engelhard telegraphed that he understood the first telegram to mean that they had sold 550 sacks and asked what they would advise him to do with the coffee, no part of which had been sold at that time. In answer to this telegram the brokers advised that the coffee be not offered for sale at that time. Subsequently the coffee was disposed of on August 24th at $6.80 per hundred pounds, and this suit was brought by the Engelhard Company to recover the difference between what the coffee could have been sold for on August 10th if the telegram sent on that day directing its sale had been promptly transmitted and what it was sold for on August 24th, to-wit, $1,950.00.

The law and facts were submitted to the court and there was a judgment for the Engelhard Company for $260.00 and interest. Engelhard & Company not being satisfied with the amount of the judgment, prosecutes this appeal, insisting that on the facts there should have been a judgment in its favor for a considerably larger sum.

In separating his conclusions of law and fact the trial court found the facts to be: (1) That the telegraph company was guilty of negligence in the transmission and delivery of the message sent on August 10th directing the sale of the coffee; (2) that if the message to the brokers had been promptly delivered, the coffee could have been sold at $8.20 a hundred; (3) that if Engelhard misunderstood the message sent by Arnold Dorr & Company on August 11th and received by him about 8:30 a. m. on that day, the telegraph company was not at fault and its rights were not to be prejudiced by the failure of the sender of the telegram to make its meaning clear, or by the mistake on the part of the receiver as to its meaning; (4) that if the message received by Engelhard from Arnold Dorr & Company on August 11th about 8:30 a. m. had been understood by Engelhard he could have sent at once a telegram ordering a sale of the coffee on August 11th, and it could have been sold on that day at $8.00 a hundred, or he could have

remained silent and the coffee would have been sold on August 11th under authority of the August 10th telegram; (5) that after August 11th, and for several days, there was no market for coffee, and on account of the conditions prevailing the coffee could not be and was not sold until August 24th.

On these facts the court found as a matter of law that the damage to which the Engelhard Company was entitled was the difference between the price at which the coffee could have been sold on August 10th, to-wit, $8.20 per hundred, if the message sent on that day ordering its sale had been promptly delivered, and the price at which it could have been sold on August 11th, to-wit, $8.00 per hundred. It is admitted that this difference amounted to $260.00, for which judgment was rendered.

As to the law of the case, the trial court correctly ruled that the telegraph company was guilty of negligence in the transmission of the message of August 10th directing Arnold Dorr & Company to sell on that day the coffee. If a telegraph company's line is out of order or not working, and knowing this fact, it accepts a message for transmission over its line without notifying the sender of the condition of the line, it assumes responsibility for loss occasioned by the delay. If the wires are out of order or not working, and for this reason it cannot send with its usual promptness a message, it must, if it desires to be excused for its failure to promptly transmit it, notify the sender, and if it fails to notify him, or informs him that his message will be promptly sent, it will be responsible for its failure to do so, although such failure may be due to causes beyond its control. Swan v. Western Union Telegraph Co., 129 Fed. 318, 67 L. R. A. 153; Postal Telegraph Cable Co. v. Nichols, 159 Fed. 643, 16 L. R. A. (N. S.) 870.

With this question of law settled, the remaining question is the measure of damage to which the Engelhard Company was entitled, and this turns purely on questions of fact. The court, as we have stated, found that if the telegram of August 10th directing a sale of the coffee had been promptly transmitted and delivered, the coffee could have been sold on that day at $8.20 per hundred, while counsel for Engelhard & Company insist that it could have been sold on that day at from $8.30 to $8.40, and so the trial court committed error in fixing the selling price on that day at $8.20.

Dorr testifies, in substance, that on the morning of August 10th there was trading in coffee around $8.50 to $8.55, and that it sold down to $8.30; that as late as five o'clock p. m. it could have been sold at $8.20. He further says that if he had received the order to sell before the market closed he could have gotten $8.30. "I could have sold it to about five o'clock or in that neighborhood. I believe I could have gotten $8.30, but I know there was a market at $8.20."

Victor Cahill, a member of the firm of Arnold Dorr & Company, said that if the telegram had been received at five o'clock the coffee could have been sold on that day "at somewhere around $8.20." That earlier in the day it was selling as high as $8.40. That it was possible the coffee could have been sold at $8.40 as late as five o'clock on that day. That the exchange closes at three o'clock, but that some trading is done as late as five o'clock, and sometimes as late as five-thirty. "Q. How late on that day could you have made a sale for $8.40? Have you any idea? A. No, I could not tell you. Q. Had you received this telegram before five o'clock there was a probability of selling at $8.40, and you know of a sale you could have made at $8.20? A. Yes." In addition to this the telegram sent by the brokers on August 10th shows that the market closed on that day at $8.20.

It must be kept in mind that if this telegram of August 10th had been diligently transmitted it would not have reached the New York firm until about 3:45 p. m., and there is no definite evidence that after this time the coffee could have been sold for more than $8.20, although there was some probability that it might have been sold for $8.40. Under these circumstances we do not think the finding of fact by the court, which is to be treated as a finding of fact by a properly instructed jury, is so flagrantly against the weight of the evidence as to justify us in disturbing it.

It is next complained that the court committed error in finding as a matter of fact that the plaintiff could have and should have had notice about 8:30 a. m. on August 11th that the coffee had not been sold on August 10th.

The telegram received by Engelhard & Company about 8:30 a. m. August 11th read: "Your telegram recd. five fifty Sept. closed eight twenty will act on your order tomorrow unless we hear to the contrary." And on receipt of this telegram, the meaning of which was misunderstood by the Engelhard Company, it tele-

graphed the New York brokers not to sell. If it had tele-
graphed them to sell, it could have been sold on August
11th at $8.00, or if it had not sent them any message they
would have sold the coffee on August 11th, under the
message sent them on August 10th.

In considering this feature of the case the trial court
said: "Engelhard misunderstood the telegram. His
construction of it was not unjustified under the circum-
stances. If, however, the message was somewhat am-
biguous, it was written by his agent. In any event, the
telegraph company is not in fault, and its rights cannot
be prejudiced by the failure of one to make his meaning
clear or the mistake of the other as to that meaning."

It is true, as said by counsel for Engelhard & Com-
pany, that if the company had not delayed the delivery
of the message of August 10th, there would not have
been any misunderstanding or occasion to misunderstand
the telegram. The misunderstanding grew out of the
fact that Engelhard when he received this telegram at
8:30 a. m. on August 11th believed that his telegram of
August 10th had been received in due time and acted
on and that 550 of the sacks had been sold at $8.20,
when, in fact, the message meant that the August 10th
telegram had not been received until 5:50 and that the
market closed at $8.20; so that upon this issue the ques-
tion turns upon whether the telegraph company should
be held responsible for the misunderstanding as to the
meaning of the telegram received by Engelhard on Au-
gust 11th at 8:30 a. m. It seems to us that the conclusion
of the trial court on this issue was correct and that the
telegraph company should not be held responsible either
for the ambiguous wording of this telegram sent by the
agents of Engelhard & Company or the failure of Engel-
hard & Company to understand it.

In short, we think the telegram should be considered
as if it had plainly said what the New York brokers
meant to and, according to their notion, did say, viz:
"We did not get your telegram until 5:50 p. m. Septem-
ber closed at $8.20. Will act on your order tomorrow un-
less we hear to the contrary." If the message had been
worded in this way there could not have been any mis-
understanding on the part of Engelhard. He would have
known that his telegram did not reach his brokers in
due time; that none of his coffee had been sold; that they
would sell it on the following day unless instructed by him
to the contrary.

The telegraph company could not have anticipated that Arnold Dorr & Company would send an ambiguous telegram, or that Engelhard would misinterpret its meaning. A telegraph company is only to be held responsible for such damages as naturally and reasonably flow from its failure to deliver a message promptly. And when the sender of a message learns that it was not delivered promptly, or that there was some mistake in its transmission, it is his duty to take with reasonable promptness such action as will correct, as much as can be, the negligence or error of the company so as to minimize the loss, and the telegraph company will not be responsible to him for any damages that by the exercise of reasonable care he could have avoided. Marr v. Western Union Telegraph Co., 85 Tenn. 529; Maddux v. Western Union Telegraph Co., 92 Kans. 619; Harrington v. Western Union Telegraph Co., 187 Mo. Ap. Rep. 580; Western Union Telegraph Co. v. Nye & Schneider Co., 70 Neb. 251; Postal Telegraph Cable Co. v. Schaefer, 110 Ky. 907; 37 Cyc. 1763, 1764.

It is complained that the court erred in finding as a matter of fact that the coffee could have been sold on August 11th at $8.00 if the New York brokers had been directed by 10:20 a. m. of that day to sell, in place of having been directed at that time not to sell.

The evidence shows that the New York market on August 11th was in a very unsettled condition. Dorr testifies that there was really no market, but Cahill, one of the firm, was asked and answered the following questions: "Q. Could you on August 11, 1914, have sold this Engelhard coffee at 8 cents? A. I believe we could. Q. And the reason you did not sell it on August 11th at 8 cents was because you did not consider that you were serving their best interest? A. It is correct. Q. Was the market open on August 11, 1914? A. Yes. Q. Then why did you not sell Engelhard & Son's coffee at 8 cents on the 11th? A. Because we told him there was nothing wanted. There was nobody bidding for coffee, and we did not consider that we were acting for the best interest of our customer to go out and offer coffee for any old price to get rid of it. Q. Did you consider that selling coffee at 8 cents was offering it at any old price? A. Yes."

In addition to this it is further shown by the market reports in the Journal of Commerce, which are a part of

the record, that on August 11, 1914, there was a market for coffee and quotations were as high as $8.25.

Upon this evidence we think the trial court was justified in finding that there was a market for coffee on August 11th and that this coffee could have been sold at $8.00 on that day, and this being so, the amount of damage to which Engelhard & Company was entitled was, as found by the court, the difference between what the coffee could have been sold for on August 10th and what it could have been sold for on August 11th.

We agree with counsel for Engelhard that if there had been no market for coffee on August 11th, or thereafter, the measure of damage would have been the difference between the price at which the coffee could have been sold, had the message been promptly delivered, and the price which could thereafter have been obtained for it by the exercise of reasonable diligence, and the necessary expense of keeping it in the meanwhile. And if there had been no market, or rather market value for coffee on August 11th, we might well assume that reasonable diligence was exercised in selling it on August 24th at $6.80. But as there was a market and the coffee had a market value on August 11th, the measure of damage under the circumstances of this case is the difference between what the coffee could have been sold for if the message had been promptly delivered and what it could have been sold for on August 11th.

For the reasons indicated, the judgment is affirmed.